IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA

vs.     5:04CR50/MCR
        5:07CV54/MCR/MD

TOBY BLESSMAN

## REPORT AND RECOMMENDATION

This matter is before the court upon a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255 (doc. 211). The government has filed a response (doc. 214) and the defendant has filed a reply (doc. 219). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that defendant has not raised any issue requiring an evidentiary hearing, Rules Governing Section 2255 Cases 8(a) and (b), and that the motion should be denied.

**I. BACKGROUND**

On September 15, 2004, defendant was charged in a single count indictment with conspiracy to manufacture, distribute, and possess with intent to manufacture more than fifty grams of methamphetamine or more than five hundred grams of a methamphetamine mixture in violation of Title 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii) and 846. (Doc. 1). On November 22, 2004, defendant appeared with counsel before Magistrate Judge William Sherrill to enter a plea of guilty. Defendant, counsel and the AUSA signed a factual basis for plea which explained that defendant's specific activities in the conspiracy were the

provision of pseudoephedrine pills and lithium batteries sufficient to support the manufacture of more than fifty grams of methamphetamine. (Doc. 98). He and several co-conspirators had also attempted to steal anhydrous ammonia which is used in the making of methamphetamine. (*Id.*). Finally, he was present at the site of a methamphetamine lab in a Bay County residence and was observed pouring liquid down the drain as law enforcement officers conducted a search of the residence. (*Id.*)

  At the rearraignment, the court explained defendant's rights to him and discussed the elements of the offense, including the fact that the government had to prove that the mixture was over 50 grams of methamphetamine. (Doc. 194 at 6-12). The court specifically asked whether defendant had gone over the factual basis for the plea, including the changes made on the document, which he confirmed. (Doc. 194 at 13). When asked whether he agreed that the government could prove the facts therein beyond a reasonable doubt, he stated "Yes, sir. Except for the ones I scratched out." (Doc. 194 at 13). Defendant affirmed the truth of the matters stated in the factual basis for the plea and that it accurately described his role in the conspiracy. (Doc. 194 at 13-15). He clarified, however, that he was not involved in the cooking of the methamphetamine. (Doc. 194 at 15). The court then advised the defendant that he faced a maximum possible sentence of life imprisonment, and a minimum of ten years imprisonment, which defendant indicated he understood. (Doc. 194 at 16-18, 22). The court specifically asked whether defendant had been made any promises about the sentence that Judge Rodgers would impose, whether there was anything in writing or orally that defendant was counting on and he indicated there was not. (Doc. 194 at 20, 24). Counsel also noted for the record that he had discussed the *Blakely* case with his client and how it may or may not affect defendant's case. (Doc. 194 at 23). Defendant expressed his satisfaction with counsel and his representation of him and entered a plea of guilty. (Doc. 195 at 25).

  A PSR was prepared after rearraignment in which defendant was held accountable for 1,442 grams of methamphetamine, yielding a base offense level of 36. He received a two level upward adjustment pursuant to U.S.S.G § 2D1.1(b)(5)(A) which indicates that if the offense involved (i) an unlawful discharge, emission, or release into the environment

of a hazardous or toxic substance; or (ii) the unlawful transportation, treatment, storage, or disposal of a hazardous waste, the Base Offense Level should be increased by 2 levels. Thus, defendant's total offense level was 38, and he had a criminal history category of III. The applicable guidelines range was 292-365 months.

Although defense counsel initially had objected to the weight of drugs attributed to the defendant, the parties reached an agreement whereby the defendant would not contest the amount of drugs attributed to him and the government agreed not to ask the court to withhold acceptance of responsibility adjustment. (Doc. 199 at 3). The new guidelines range was 210 to 262 months. (*Id.*). He was sentenced to a term of 210 months imprisonment (doc. 199 at 17), at the bottom of the applicable guidelines range.

Defendant appealed, counsel filed an *Anders* brief, and the Eleventh Circuit affirmed defendant's conviction and sentence after an independent examination of the record revealed no arguable issues of merit. (Doc. 209).

In the present motion, defendant contends that counsel was constitutionally ineffective because he failed to fully advise the defendant with respect to his guilty plea and sentence, and because counsel failed to object to the sentencing court enhancing defendant's sentence on facts that were neither found by the jury beyond a reasonable doubt. The government opposes the motion in its entirety.

## II. LEGAL ANALYSIS

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States,* 538 U.S. 500, 503, 123 S.Ct. 1690, 1693, 155 L.Ed.2d 714 (2003); *see also United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002); *United States v. Jiminez*, 983 F.2d 1020, 1022, n. 1 (11th Cir. 1993). To show a violation of his constitutional right to counsel, defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d (1984); *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct.

1495, 1511, 146 L.Ed.2d 389 (2000). "*Strickland's* two-part test also applies where a prisoner contends ineffective assistance led him or her to enter an improvident guilty plea." *Yordan v. Dugger,* 909 F.2d 474, 477 (11th Cir. 1990) (citing *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). In applying *Strickland*, the court may dispose of an ineffective assistance claim if defendant fails to carry his burden on either of the two prongs. 466 U.S. at 697, 104 S.Ct. at 2069.

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Id*. at 688, 104 S.Ct. at 2065; *see Atkins v. Singletary*, 965 F.2d 952 (11th Cir. 1992). "[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990) (citing *Harich v. Dugger*, 844 F.2d 1464, 1469 (11th Cir. 1988); *Chandler v. United States,* 218 F.3d 1305, 1314 (11th Cir. 2000); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *United State v. Freixas*, 332 F.3d 1314, 1319-1320 (11th Cir. 2003). (quoting *Brownlee v. Haley*, 306 F.3d 1043, 1059 (11th Cir. 2002)(quoting *Strickland*, 466 U.S. at 687, 689-90, 104 S.Ct. at 2064-66 and *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)). When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n. 18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the

defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369-70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203-04, 121 S.Ct. 696, 700-01, 148 L.Ed.2d 604 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.*

To establish ineffective assistance, defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge*, 431 U.S. at 74, 97 S.Ct. at 1629); *United States v. Ross*, 147 Fed.Appx. 936, 939 (11th Cir. 2005).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle v. Secretary for Dept. Of Corrections,* 480 F.3d 1092 (11th Cir. 2007); *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 122 S.Ct. 234 (2001).

Defendant first contends that counsel's performance was ineffective because he failed to go over the entire Factual Basis for the plea with him. This claim is squarely refuted by the transcript of the rearraignment proceeding, as set forth above, as well as the

document itself which shows parts were scratched out and initialed by the defendant, his attorney and the government.  (Doc. 194 at 13-15).  It is well established that a defendant's statements during a Rule 11 colloquy as well as any findings made by the judge accepting the pleas constitute a formidable barrier in any subsequent collateral proceedings. *Blackledge v. Allison,* 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977); cf. *Holmes v. United States*, 876 F.2d 1545, 1550 (11th Cir. 1989) (trial court satisfied itself during Rule 11 colloquy of voluntary and understanding nature of plea).  Solemn declarations made under oath in open court carry a strong presumption of verity. *Blackledge,* 431 U.S. at 73-74, 97 S.Ct. at 1629*.*  They are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise.  *Id.; see also United States v. Gonzalez-Mercado,* 808 F.2d 796, 800 n.8 (11th Cir. 1987); *Downs-Morgan v. United States*, 765 F.2d 1534, 1541 n. 14 (11th Cir. 1985); *Potts v. Zant,* 638 F.2d 727, 750-51 (5th Cir. 1981) (citing  *United States v. Sanderson*, 595 F.2d 1021 (5th Cir. 1979)); *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997); *United States v. Messino*, 55 F.3d 1241, 1248 (7th Cir. 1995); *United States v. Mims*, 928 F.2d 310, 313 (9th Cir. 1991); *United States v. DeFusco*, 949 F.2d 114, 119 (4th Cir. 1991).  "[i]f the Rule 11 plea taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely."  *United States v. Stitzer*, 785 F.2d 1506, 1514, n.4 (11th Cir. 1986). Defendant has presented no "compelling evidence" that would explain his statements made under oath at the rearraignment proceeding that he now attempts to contradict.

Defendant also contends that counsel urged him to plead guilty without fully explaining the sentencing consequences of the plea.  He states that counsel allegedly failed to tell him that he could be facing a two level upward adjustment for unlawful discharge or release into the environment of a hazardous or toxic substance, and that counsel told him that if he entered a plea of guilty, he would be subject to a term of incarceration of approximately ten years.  Although the particular enhancements that might be applied to defendant may not have been known to him, again, the rearraignment transcript establishes that defendant was well advised of the sentence he faced, including the fact that there was a ten year minimum mandatory that would be imposed absent a

substantial assistance motion, and that the maximum sentence he faced was life imprisonment. (Doc. 194 at 16-18, 22). Furthermore, defendant indicated under oath that he understood the application of the sentencing guidelines (doc. 194 at 17-18) and that there were no promises about the sentence that would be imposed. (*Id.* at 20). "A guilty plea means something. It is not an invitation to a continuing dialogue between a criminal defendant and the court," *Murray v. United States*, 145 F. 3d 1249, 1254 (11th Cir. 1998), which appears to be what the defendant is attempting to do in this case.

Defendant next complains that counsel was ineffective because he never told defendant he would be entering a plea to the quantity of drugs ultimately listed in the PSR. Defendant maintains that had this amount been mentioned in the indictment or the factual basis for the plea, that he would not have agreed to this and instead would have proceeded to trial.

Defendant is correct that a specific drug weight beyond "in excess of fifty grams" was not mentioned in the Factual Basis for the plea. During the rearraignment proceeding, counsel noted that no plea and cooperation agreement had been signed because the parties could not yet agree on defendant's level of personal culpability in the case. (Doc. 194 at 23-24). The PSR calculated the quantity of drugs attributable to the defendant by considering that he had provided approximately 51,500 pseudoephedrine pills to his co-conspirators and that for every 1,000 pills provided, twenty-eight grams of methamphetamine could be manufactured. (PSR, ¶¶ 6, 8; doc. 98). At one point, it appeared that the quantity of drugs would be contested at sentencing because defense counsel objected to the amount of methamphetamine attributed to the defendant in the PSR. However, that issue was resolved via an agreement between the government and defense counsel that the government would not oppose the acceptance of responsibility adjustment if the defendant did not contest the quantity of drugs attributable to him. (Doc. 199 at 3, 15-16; doc. 214, exh. 3). Because defendant himself agreed to the amount at sentencing, he can not now fault counsel for alleged deficiencies in his performance. (Doc. 199 at 15-16).

Defendant also contends that counsel should have objected to the two level adjustment for unlawful discharge or release of hazardous or toxic substance or unlawful transportation of hazardous waste under U.S.S.G. § 2D1.1(b)(6)(A). He does not state what specific objection counsel should have raised, and this issue was discussed at sentencing. The Factual Basis for the plea relates that defendant and two co-conspirators attempted to steal anhydrous ammonia from a business in Colquitt County, Georgia. (Doc. 98 at 2). Counsel for the government explained that when they attempted to get the anhydrous ammonia into a propane tank that they were going to use to transport it back to Panama City, they accidentally released it into the environment, and one of the co-conspirators was burned in the process. (Doc. 199 at 10). Counsel speculated that this was the reason the three individuals fled at the time they did, because of the injury. The court stated that the two level adjustment would not be applied in every case, but in this case there was "an indication" that the substance was released into the environment. (*Id.*) The defendant addressed the court and offered another explanation for his co-conspirator's injury, and the court informed him that it was not the burn injury, but rather the release into the environment that triggered the adjustment. (Doc. 199 at 10-11). Defendant attempted to explain that he never had any intent to steal any anhydrous ammonia, and that he had nothing to do with the release of the substance into the environment, and the AUSA noted that he pled no contest to the state charges relating to that incident. (Doc. 199 at 12-13, 15). Counsel is not ineffective for failing to preserve or argue a meritless claim. *See Brownlee v. Haley,* 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); *Meeks v. Moore*, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for change of venue); *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue meritless issue); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (counsel was not ineffective for informed tactical decision not to make what he believed was a meritless motion challenging juror

selection procedures where such a motion has never been sustained because such a motion would not have been successful).  Because this issue was thoroughly discussed at sentencing and the record reflects a factual basis for the application of the adjustment, counsel was not constitutionally ineffective for failing to lodge a formal objection.

Defendant's final argument is that his sentence was unconstitutional in light of *Blakely v. Washington*[1] and *United States v. Booker*[2] because his sentence exceeded the maximum authorized by the facts established by a plea of guilty or a jury verdict. Defendant admits that he pleaded guilty to a violation of title 21 U.S.C. § 841(b)(1)(A)(viii). This section provides for a minimum mandatory sentence of ten years imprisonment, and a maximum of life imprisonment. In the seminal case of *Apprendi v. New Jersey*,[3] the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490, 120 S.Ct. at 2362-63.  *See also Ring v. Arizona*, 536 U.S. 584, 589, 122 S.Ct. 2428, 2432, 153 L.Ed.2d 556 (2002) (concluding under *Apprendi* that "[c]apital defendants . . . are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment.").  As clarified by the Court in *Blakely*:

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.  See Ring, supra*, 536 U.S. at 602, 122 S.Ct. at 2428 ("'the maximum he would receive if punished according to the facts reflected in the jury verdict alone'" (*quoting Apprendi, supra*, 503 U.S. at 483, 120 S.Ct. at 2348)) . . . .  In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings.

124 S.Ct. at 2537-38 (emphasis in original, some citations omitted); *see also In re Dean*, 375 F.3d 1287, 1290 (11th Cir. 2004) (quoting *Blakely*).  In *Booker,* 543 U.S. 220, 125 S.Ct.

---

[1] ***Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).**

[2] ***United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).**

[3] ***Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 2362-63, 147 L.Ed.2d 435 (2000).**

738, 160 L.Ed.2d 621 (2005), the Supreme Court extended its holding in *Blakely* to the Sentencing Guidelines, holding that the mandatory nature of the federal guidelines rendered them incompatible with the Sixth Amendment's guarantee to the right to a jury trial.

At the time of the defendant's guilty plea, November 22, 2004, although *Blakely* had already been decided, the fate of the sentencing guidelines had not been resolved by the Supreme Court in *Booker*. During the rearraignment proceedings, Judge Sherrill commented on the uncertainty for the future applications of the guidelines post-*Blakely* and stated, "but since there is not a plea agreement, then there is not any agreement as to what *Blakely* means in this case." (Doc 194 at 22). Defendant's counsel advised the court that he had discussed the status of the Blakely case with the defendant and how it might affect defendant's case. (Id. at p 23)

*United States v. Booker* was decided on January 12, 2005, before the defendant's sentencing hearing (May 4, 2005). The *Booker* Court ruled that the sentencing court must consult the Guidelines, but that the Guidelines were advisory and the sentencing court must tailor the sentence based on the factors delineated at Title 18, United States Code, Section 3553(a). *Id*.

At defendant's sentencing on May 4, 2005, the district court had the benefit of the Booker decision and was well aware that the Sentencing Guidelines were not mandatory. In his sentencing argument, defendant's counsel specifically requested a downward departure to the ten year minimum mandatory penalty based on the advisory nature of the Guidelines. (Doc 199 at 6). The defendant's guideline range was determined to be 210-262 months imprisonment. (*Id.* at 4). The court sentenced defendant to the lowest end of the applicable guideline range after carefully considering the factors set out in Title 18, United States Code, Section 3553(a), as well as the calculated applicable guidelines. (*Id.* at 17,18). Therefore, since the record reflects that the court consulted the guidelines and used them in an advisory manner while tailoring the defendant's sentence in accordance with Title 18, United States Code, Section 3553(a), there is no *Booker* violation.

Based on the foregoing, it is respectfully RECOMMENDED:

The motion to vacate, set aside, or correct sentence (doc. 211) be DENIED.

At Pensacola, Florida, this 25th day of July, 2007.

/s/ *Miles Davis*
      **MILES DAVIS**
      **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof. **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.** A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).